# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: April 23, 2025
Reissued for Public Availability: May 23, 2025

```
* * * * * * * * * * * * *    *
DAVID HOPKINS,                *
                             *
        Petitioner,          *     No. 22-1486V
                             *
v.                           *     Special Master Dorsey
                             *
SECRETARY OF HEALTH          *     Dismissal Decision; Failure to Prosecute;
AND HUMAN SERVICES,          *     Insufficient Proof; Entitlement.
                             *
        Respondent.          *
                             *
* * * * * * * * * * * * *    *
```

David Hopkins, pro se, Wallingford, PA.
Katherine Carr Esposito, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION**[1]

## I.    INTRODUCTION

On October 11, 2022, David Hopkins ("Petitioner") filed a pro se petition for compensation in the National Vaccine Injury Program, 42 U.S.C. § 300aa-10 et seq. (2018).[2] Petitioner alleged that he suffered a shoulder injury as a result of the influenza ("flu") vaccine he received on October 25, 2019.  Petition at Preamble (ECF No. 1).

Based on the reasons set forth below and in the order to show cause dated July 16, 2024, the undersigned **DISMISSES** this case for failure to prosecute and insufficient proof.

---

[1] Pursuant to Vaccine Rule 18(b), this Decision was initially filed on April 23, 2025, and the parties were afforded 14 days to propose redactions.  The parties did not propose any redactions. Accordingly, this Decision is reissued in its original form for posting on the court's website.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act").  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

## II.    BACKGROUND

### A.  Procedural History

On October 11, 2022, Petitioner filed a petition, alleging that that as a result of receiving a flu vaccine on October 25, 2019, he developed a shoulder injury.  Petition at preamble.  In his petition, Petitioner did not state in which arm he received the vaccine or identify which shoulder was allegedly injured.

Upon reassignment to the undersigned on October 14, 2022, the undersigned granted Petitioner's motion for leave to proceed in forma pauperis.  Order dated Oct. 14, 2022 (ECF No. 9).  An initial status conference was scheduled for December 13, 2022.  Order dated Nov. 9, 2022 (ECF No.11).

At the initial status conference, the undersigned explained the process and timeline of the Vaccine program.  Order dated Dec. 14, 2023, at 1 (ECF No. 12).  Since no medical records had been filed yet, the undersigned emphasized the importance for that to happen before the case could move forward.  Id.  The undersigned requested Petitioner file complete and certified medical records from all providers from three years prior to the vaccination at issue to present. Id. at 1-2.  During the status conference, Petitioner was also informed that he could obtain an attorney and informed how to file documents (including information regarding the e-notification consent form) and how to file a motion for extension of time if needed.  Id.  Petitioner was directed to file a status report by January 13, 2023, and his complete certified medical records by February 13, 2013.  Id. at 2-3.

On February 13 and 14, 2022, Petitioner filed some medical records.  ECF Nos. 13-14.[3] Petitioner did not file a status report.  Thereafter, Respondent was instructed to file a status report indicating if there were any missing medical records Respondent needed in order for Respondent to file his Rule 4(c) report.  Order dated Feb. 14, 2023 (ECF No. 15).  On March 16, 2023, Respondent filed a status report identifying missing records needed to review the case. Respondent's Status Report ("Resp. Status Rept."), filed Mar. 17, 2023 (ECF No 16).  Those records included Petitioner's vaccination record and medical records from all providers from three years prior to the vaccination at issue to present.  Id. at 2.  Petitioner was ordered to file the requested records by May 15, 2023.  Order dated Mar. 17, 2023 (ECF No. 17).

Petitioner did not file the requested records by May 15, 2023.  See Order dated June 1, 2023 (ECF No. 19).  Instead, on May 15, 2023, Petitioner emailed the undersigned's law clerk an unidentified link purportedly leading to the requested medical records.  Id. at 1.  Petitioner was informed that medical records could not be filed in that manner.  Id.  He was given guidance on how to properly file records and was advised that he should fill out the e-consent notification

---

[3]  The undersigned will refer to all medical records filed by Petitioner by CM/ECF docket number and pdf page number.

2

Case 1:22-vv-01486-UNJ    Document 40    Filed 05/23/25    Page 3 of 9

form if he wished to send and receive filings electronically.[4]  Id. at 1-2.  The undersigned set a new deadline of June 16, 2023 for Petitioner to file his vaccination record, complete certified medical records from the three years prior to vaccination, and a status report.  Id. at 2.

Petitioner failed to file the requested records or a status report by the June 16, 2023 deadline.  The undersigned set a new deadline of July 21, 2023.  Order dated June 26, 2023, at 3 (ECF No. 21).  She warned Petitioner that the failure to comply with court orders or file requested records could result in the dismissal of his claim.  Id. at 2.

 Petitioner again failed to file the requested records or a status report by the court-imposed deadline and the undersigned issued her first order to show case.  Order to Show Cause dated Aug. 1, 2023 (ECF No. 22).  Petitioner was ordered to file evidence that he received the flu vaccine and suffered a vaccine-related injury by September 29, 2023.  Id. at 2.  The undersigned warned Petitioner that failure to file the requested evidence by the deadline could result in a dismissal for failure to prosecute.  Id.

On September 29, 2023, Petitioner filed a notice of filing and a motion for extension of time.  Notice of Filing, filed Sept. 29, 2023 (ECF No. 23); Petitioner's Motion for Extension of Time ("Pet. Mot."), filed Sept. 29. 2023 (ECF No. 24).  The notice of filing was a single page that appeared to be a coversheet for medical records; however, no medical records were filed.  See Notice of Filing.  The motion for extension to time was "to allow the court to acknowledge that they have properly received [his] medical information, and to answer any questions from the court so that the [R]espondent can review [his] files and request any additional information."  Pet. Mot. at 1.

On October 5, 2023, the undersigned granted Petitioner's motion for extension of time and directed Petitioner to file the requested medical records by November 6, 2023.  Order dated Oct. 6, 2023, at 4 (ECF No. 25).  Petitioner was also directed to file a status report by November 6, 2023.  Id.  The undersigned again warned Petitioner that the failure to comply with court-imposed deadlines and failure to file requested documents could result in the dismissal of his case.  Id. at 2.

Petitioner did not file medical records or a status report by the November 6, 2023 deadline, so the undersigned set a new deadline of January 5, 2024 to file the requested medical records and a status report.  Order dated Nov. 20, 2023 (ECF No. 26).  She advised Petitioner that failure to file these items by the court-imposed deadline would result in a second order to show cause.  Id. at 3.

Petitioner did not file medical records or a status report by January 5, 2024.  On January 9, 2024, Petitioner filed a status report.  Pet. Status Rept., filed Jan. 9, 2024 (ECF No. 27).  Petitioner explained that he was "searching for assistance in transmission of the medical records previously submitted."  Id. at 1.  Petitioner also reported that he was "in the processing of getting a lawyer."  Id. at 2.  Additionally, Petitioner reported that he was experiencing extreme stress and

---

[4] Petitioner filed the e-consent notification form on May 15, 2023.  See ECF No.18.

anxiety following the death of his sister.  Id. at 2.  Given the circumstances presented in the status report, the undersigned again granted Petitioner additional time to file the requested medical records.  Order dated Jan 12, 2024, at 1-2 (ECF No. 28).  Petitioner was ordered to file his vaccination record and medical records from three years prior to vaccination no later than March 12, 2024.  Id. at 4.  Petitioner was informed that failure to file these items by the court-imposed deadline would result in dismissal of his claim.  Id.

On February 13, 2024, Petitioner filed medical records from Optimum PT.  ECF No. 29.  On March 12, 2025, Petitioner filed his vaccination record and medical records from the three years prior to vaccination.  ECF Nos. 30-32.

On April 23, 2024, Respondent filed his Rule 4(c) report.  Resp. Rept., filed Apr. 23, 2024 (ECF No. 34).  Respondent argued that the case was not appropriate for compensation.  Id. at 1.  First, Respondent stated that Petitioner had pre-existing right shoulder pain prior to vaccination.  "[T]he very reason for [Petitioner's] urgent care appointment on the day of vaccination was for his right shoulder pain, and a physician observed right shoulder pain on exam."  Id. at 9 (citing ECF No. 30-1 at 285, 287-88).  Second, Petitioner was vaccinated in his left arm, but his complaints relate to his right arm and right shoulder pain.  Id. (citing ECF No. 30-1 at 3).  Additionally, Respondent posited Petitioner fails to meet the requirements for a Table SIRVA[5] injury and is unable to establish a causation-in-fact claim.  Id. at 9-14.  Petitioner was directed to provide a response to Respondent's Rule 4(c) report as well as any evidence to support his claim by June 24, 2024.  Order dated Apr. 26, 2024 (ECF No. 35).

On June 18, 2024, Petitioner filed a response to Respondent's Rule 4(c) report.  Pet. Rept., filed June 18, 2024 (ECF No. 36).  Petitioner provided the following statements in his response to the Respondent's Rule 4(c) report:

> I received a vaccination from Kaiser, at one of their satellite locations in Glendale, California where I was residing at the time.  On this day, I had gone for my medications and the lobby was crowded. . . . After about a week discomfort in my arm developed into pain.  I returned to Kaiser to seek advice and medical care. (these are two of the omitted records) Kaiser did not give me any relief from the pain or offer any information for treatment of a SIRVO [sic].  The pain was persistent and constant and I had to seek medical care.  At times I was in excruciating and debilitating pain.  Eventually I went to a Clinic, Patient First to find out if there was anything that could be done.

Id. at 2.  Petitioner asserted that all of Kaiser's records were available to Respondent and claimed that "they were withholding records . . .[regarding] the date and report of [his] initial visit and [his] follow up visit."  Id. at 4.  Petitioner did not address his pre-existing right shoulder pain, he did not file evidence to rebut the record showing that the vaccination was administered in his left arm, and he did not provide evidence to rebut Respondent's assertion that he was not entitled to

---

[5] SIRVA is the abbreviation for shoulder injury related to vaccine administration.  See 42 C.F.R. § 100.3 (c)(10).

compensation for either a Table claim or causation-in-fact claim.

On July 16, 2024, the undesigned again issued an order to show cause. Order to Show Cause dated July 16, 2024 (ECF No. 37). The undersigned reviewed Respondent's Rule 4(c) report, and the medical records, showing that Petitioner received the vaccine in his left shoulder and therefore there is no factual basis to claim a shoulder injury in the right shoulder. Accordingly, Petitioner was ordered to file evidence to establish the vaccine was given in his right shoulder. Id. Petitioner was warned that failure to file such evidence would result in the dismissal of his claim. Id.

Petitioner failed to file any evidence by the August 15, 2024 deadline. Twenty-eight days after the deadline, on September 12, 2024, Petitioner filed an untimely response to the July 16, 2024 order to show cause. Show Cause Order Response, filed Sept. 12, 2024 (ECF No. 38). In his untimely response, Petitioner asserted that he received his vaccination at Kaiser's clinic and pharmacy area in Glendale, California and "did not have an appointment at urgent care on the day of any vaccination." Id. at 1. He reiterated that the medical records omit "the true date of [his] injury" and claimed that Kaiser and Respondent were withholding medical records that "would show that [Petitioner] was vaccinated [in Glendale] and provide direct evidence that [he] did not switch arms and [he] did not have a pre-existing right shoulder injury." Id. at 1-2. However, Petitioner did not provide any evidence to establish that he received the flu vaccination in his right arm.

This matter is now ripe for adjudication.

**B.  Summary of the Relevant Medical Records**

On October 25, 2019, Petitioner presented for an office visit at the Kaiser Permanent Urgent Care Clinic in Los Angelos, California with chief complaints of "back pain" and "medication review." ECF No. 30-1 at 283, 285. He was seen by Katherine Schweickhardt, M.D. Id. at 285. A patient check-in questionnaire stated the October 25, 2019 visit was the "result of a slip, fall or accident." Id. at 306-07. Petitioner reported right shoulder pain. Id. at 285. He denied back pain. Id. Review of systems was positive for joint pain in the right shoulder and negative for back pain. Id. at 287. The physical examination noted abnormal speech, a sensory deficit, and bilateral 1+ patellar reflexes. Id. Dr. Schweickhardt placed an order for flu vaccine.[6] Id. at 288-289. Visit diagnosis were listed as "Right Shoulder Joint Pain[,] Vaccination for Influenza[,] Lumbar Muscle Strain [, and] Blood Pressure Elevation." Id. at 283. Immunization records indicate that Petitioner received an intramuscular Fluarix Quad flu vaccine in his left deltoid on October 25, 2025. Id. at 3.

---

[6] The flu vaccine order placed by Dr. Shweickhardt on October 25, 2019 noted the status as "Cancel Pend" and "Discontinued." ECF No. 30-1 at 288-289. However, Petitioner's visit diagnosis and immunization records documented that he received a flu vaccine on October 25, 2019. Id. at 3, 283.

Petitioner's next contact with medical professionals was on January 15, 2020, when he was contacted by a hypertension outreach group. ECF No. 30-1 at 330. Petitioner was offered an appointment for a group visit, a nurse clinic blood pressure check, and a visit with his PCP, but Petitioner declined these appointments. Id.

On February 5, 2020, Petitioner reported to Patient First Springfield Urgent Care in Pennsylvania with complaints of neck and shoulder pain that he said had been present "since getting [a] flu vaccination," with onset "1 month ago." ECF No. 30-1 at 466. Petitioner was "adamant" that he did not have any such pain prior to vaccination. Id. He had been trying over the counter remedies, but he experienced very little relief. Id. An examination revealed a normal range of motion ("ROM"). Id. Petitioner was diagnosed with a muscle spasm and was advised to manage his condition conservatively for the time being and was referred to an orthopedist. Id.

On February 11, 2020, Petitioner presented to Premier Orthopedics and saw orthopedic surgeon Frank P. Giammattei, M.D. ECF No. 13 at 17. Petitioner reported "[s]udden . . . severe, [and] fluctuating" pain after a flu vaccine on October 19, 2019.[7] Id. On examination, Petitioner exhibited a full and symmetrical ROM. Id. at 18. Petitioner was diagnosed with right shoulder subacromial impingement and bicipital tendinitis. Id. Petitioner received a cortisone injection into his right shoulder and was referred to physical therapy ("PT"). Id.

Petitioner returned to Dr. Giammattei on February 25, 2020, and reported right hip and low back pain, with onset after his November 3, 2017 motor vehicle accident. ECF No. 13 at 15. X-rays of the lumbar spine were unremarkable. Id. at 15, 16. Dr. Giammattei opined that "[u]pon review of exam and x-ray findings, we believe the [patient's] symptoms maybe related to muscle strain more than an acute skeletal pathology due to [history] of [motor vehicle accident.]" Id.

On March 17, 2020, Petitioner reported to Optimum PT for an initial examination of his right hip muscle, fascia, and tendon strain and for his right shoulder impingement syndrome and bicipital tendinitis. ECF No. 14 at 77. Petitioner's clinical presentation was noted to be "unstable with unpredictable characteristics." Id. at 79. The therapist recorded that Petitioner stated that his right shoulder pain was "[t]he result of a flu shot" he had received in "11/2019"[8] from Kaiser. Id. at 77. Petitioner reported that he had "[v]ery intense pain at site of injection and up into the neck for the next 24 hours." Id. He stated he went back to Kaiser who "told him to apply heating pad."[9] Id. On examination, Petitioner demonstrated a normal flexion and

---

[7] Petitioner's immunization records do not document that Petitioner received a flu vaccine on October 19, 2019. See ECF 30-1 at 3-4.

[8] Petitioner's immunization records do not document that he received a flu vaccine in November of 2019. See ECF No 30-1 at 3-4.

[9] There is no record of Petitioner returning to Kaiser after receiving his flu vaccine. See ECF No 30-1 at 11.

abduction ROM with a note that his right shoulder was "mildly painful > 90 deg." Id. at 78. His right shoulder glenohumeral capsule was noted to be moderately stiff in all directions. Id. at 79. Petitioner began attending PT at Optimum PT and participated in three sessions in March 2020, before the practice was closed due to the COVID-19 pandemic. Id. at 93, 87, 81, 69.

On June 9, 2020, Petitioner saw Dr. Giammattei in follow-up of his right shoulder pain. ECF No. 13 at 12. Petitioner had difficulty sleeping and reported night pain. Id. He was diagnosed with right shoulder subacromial impingement, and he received a second cortisone injection as well as new PT orders. Id. at 13; ECF No. 30-1 at 416.

Petitioner attended 18 PT sessions at Optimum between June 17, 2020 and August 5, 2020, when he planned to trial a month of self-care with a home exercise program. ECF No. 14 at 32-64. On September 4, 2020, Petitioner returned to Optimum PT reporting a "relapse" of intense right shoulder pain. Id. at 25.

On September 14, 2020, Petitioner returned to Patient First Springfield Urgent Care. ECF No. 30-1 at 468. The provider recorded Petitioner's "relatively longstanding recurrent flare-ups of right shoulder pain . . . [which he] tells me . . . initially was related to an influenza vaccine-induced bursitis in October 2019." Id. Petitioner had been using Naproxen and ibuprofen for his shoulder pain. Id. Petitioner's right shoulder ROM was described as "completely intact," there was no significant reproducible tenderness, strength was 5/5 bilaterally in the upper extremities, and he tested negative for a rotator cuff tear. Id. Also, during this visit, Petitioner received a flu vaccine in his left deltoid. Id.

On September 16, 2020, Petitioner reported to Dr. Giammattei, with complaints of right shoulder pain and decreased mobility. ECF No. 13 at 9. Dr. Giammattei noted that Petitioner exhibited tenderness and impingement on examination. Id. at 10. Petitioner underwent an x-ray of the cervical spine and was noted to show osteoarthritis and that he was suffering from radiculopathy. Id. Dr. Giammattei explained that Petitioner's symptoms appeared "to be related to both [the right] shoulder and cervical spine." Id. A Medrol dose pack was ordered, and Petitioner was again referred to PT. Id.

Petitioner returned to PT for a twenty-second session on September 17, 2020, for his right shoulder impingement syndrome. ECF No. 14 at 18. He reported to PT until October 5, 2020, his twenty-ninth total visit, at which point his insurance stopped covering the visits. Id. at 9, 7.

No other subsequent medical records were filed.

## III.    DISCUSSION

When a petitioner fails to comply with court orders to prosecute his case, the court may dismiss the case. Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to

submit pre-trial memorandum); <u>Adkins v. United States</u>, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests).

 Vaccine Program cases that have been dismissed for failure to respond to an Order to Show Cause include but are not limited to: <u>Byrd v. Sec'y of Health & Hum. Servs.</u>, 778 F. App'x 924 (Fed. Cir. 2019); <u>Ghasemipor v. Sec'y of Health & Hum. Servs.</u>, No. 20-17V, 2020 WL 7497878 (Fed. Cl. Spec. Mstr. Nov. 23, 2020); <u>Flores v. Sec'y of Health & Hum. Servs.</u>, No. 20-157V, 2020 WL 5798502 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); <u>Button ex rel. W.S.B. v. Sec'y of Health & Hum. Servs.</u>, No. 16-1391V, 2017 WL 2876099 (Fed. Cl. Spec. Mstr. June 5, 2017); <u>Duncan v. Sec'y of Health & Hum. Servs.</u>, No. 16-1367V, 2020 WL 6738118 (Fed. Cl. Spec. Mstr. Oct. 19, 2020), <u>mot. for rev. denied</u>, 153 Fed. Cl. 642 (2021).

 Here, Petitioner failed to file evidence or a response to the undersigned's July 16, 2024 Order to show cause by the court-imposed deadline. Throughout this case, Petitioner has missed deadlines to file medical records and failed to file status reports. The undersigned repeatedly warned Petitioner that his failure to comply with court deadlines and court orders would result in the dismissal of his claim for failure to prosecute. Petitioner's untimely response to the Order to show cause did not provide any evidence to establish that he received the October 25, 2019 flu vaccine in his right arm. Petitioner has failed to comply with the Court's Order to show cause. Thus, the undersigned finds it appropriate to dismiss the case for failure to prosecute and lack of proof of vaccination in the allegedly injured arm.

 Moreover, to receive compensation under the Act, Petitioner must prove either (1) that he suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to one of his vaccinations, or (2) that he suffered an injury that was actually caused by a vaccine. <u>See</u> §§ 11(c)(1), 13(a)(1)(A).

 A petitioner may establish causation by showing that he suffered an injury contained in the Vaccine Injury Table corresponding to the vaccine he received within the appropriate timeframe. 13(a)(1)(A), §11(c)(1)(C)(i), § 14(a), § 13(a)(1)(B). In such a case, causation is presumed. <u>Id.</u> To satisfy the elements for an on-Table SIRVA claim, a petitioner must show that (1) he had no history of shoulder pain prior to vaccination, (2) the onset of pain occurred within 48 hours after vaccination, (3) the injury is confined to the shoulder in which he received the vaccine, and (4) there is no evidence of any alternative cause of his pain. 42 C.F.R. § 100.3(a), (c)(10)(i)-(iv).

 Petitioner cannot establish entitlement to compensation based solely on his assertions; rather, a vaccine claim must be supported either by medical records or by the opinion of a medical doctor. § 13(a)(1). Further, contemporaneous medical records are presumed to be accurate and complete in their recording of all relevant information as to petitioner's medical issues. <u>Cucuras v. Sec'y of Health & Hum. Servs.</u>, 993, F.2d 1525, 1528 (Fed. Cir. 1993).

 Here, the medical records filed by Petitioner are insufficient to establish a Table SIRVA claim. First, the medical records document that Petitioner presented to the urgent care clinic on October 25, 2019 with a complaint of right shoulder pain. The medical records also show that

Petitioner received a flu vaccine on October 25, 2019 in his left arm. Petitioner has produced no evidence that these medical records are inaccurate or incomplete nor has he produced any evidence demonstrating that he received the vaccine in his right arm. Petitioner is unable to satisfy the first and third element of a SIRVA table claim as he had a history of shoulder pain prior to vaccination and his alleged vaccine injury is not confined to the shoulder in which he received his vaccine.

Petitioner asserts that Respondent, in conjunction with Kaiser, is withholding his correct vaccination medical records in order to "misrepresent the facts of [his] injury." Show Cause Order Response at 2. However, Respondent's Rule 4(c) report relies only on the medical records filed by Petitioner himself.

Because Petitioner cannot establish he suffered a Table Injury, he must prove a vaccine he received caused his injury. To do so, Petitioner must establish, by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005). In this case, the medical records filed by Petitioner are insufficient to establish entitlement to compensation as they show he did not receive a vaccine in his affected arm.

## IV.    CONCLUSION

The undersigned extends her sympathy to Petitioner for the pain and suffering he has experienced. The undersigned's Decision, however, cannot be decided based upon sympathy, but rather on the evidence and law.

Accordingly, this case is **DISMISSED** for failure to prosecute and insufficient proof. In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master